UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:14-CV-00607- DALTON/Spalding

THE WINDWARD ON LAKE CONWAY
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

vs.

UNITED NATIONAL INSURANCE COMPANY and
APPALACHIAN UNDERWRITERS, INC.,

    Defendants.
_____/

## MEMORANDUM IN OPPOSITION TO DEFENDANT UNITED NATIONAL INSURANCE COMPANY'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Plaintiff, The Windward on Lake Conway Condominium Association, Inc. ("Windward"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56 and Local Rule 3.01, hereby responds in opposition to Defendant, United National Insurance Company's ("United") Dispositive Motion for Summary Judgment. [DE 43].

## BACKGROUND

In 2011, Windward was developing a new condominium complex located at 7818 Daetwyler Drive in Belle Isle, Florida. The condominiums, located on the edge of beautiful Lake Conway, would soon be filled with condominium owners as quickly as individuals and families would purchase units. Windward applied for the necessary insurance, disclosing that units were being sold in its application to United. Windward paid roughly $20,000.00 in premiums and United issued an insurance policy to cover Windward's property. Within weeks of the binding of the policy, the first condominium unit was sold and documentation of the sale was forwarded to

the insurance broker. Sales continued throughout the first year, and in 2012, when Windward renewed its insurance with United, the broker advised United of the occupancy level at the property. Windward paid another $20,000.00 for insurance and United renewed the policy.

Unfortunately, a tornado struck one of Windward's buildings on or about March 24, 2015. The tornado damaged the roof and resulted in significant water intrusion. Thankfully, individual condominium owners leapt into action and took protective measures to keep the damage from getting worse. Nevertheless, the damage ended up costing over $100,000.00 to repair. Windward immediately submitted a claim to its insurer, United. The claim got off to a rough start when United first claimed that the damage was below the deductible, that the roof damage was the result of faulty installation, and that there was no tornado in the area. After an admittedly bungled initial evaluation of the tornado claim, United found the "gotcha" it was looking for, and denied Windward's claim for tornado damage based on a vacancy endorsement that was added to the policy when it was initially bound in 2011. United claimed that the vacancy endorsement prohibited what Windward told United was going on all along, the developer was selling units to individuals and families. After paying nearly $40,000.00 in premiums for insurance, United alleged that Windward effectively had no insurance dating back to when the first unit was sold in 2011 because the entire condominium complex was not 100% vacant.

**PROCEDURAL POSTURE**

Following the denial, Windward brought suit against United under alternate theories. Count I of the Complaint alleges breach of the insurance contract, and Count II requests insurance policy construction in the form of declaratory relief that is necessary to determine coverage for the breach alleged in Count I. Should the Court interpret the policy in Count II in favor of Windward, coverage would be established for the tornado loss, a trial on damages would

take place under Count I, and the Court need never address Count III or Count IV requesting the equitable relief of policy reformation or rescission, respectively. Should the Court interpret the policy in Count II in favor of United, Count I necessarily falls, but due to conflicting testimony that precludes summary judgment for either party, a bench trial would be necessary on Counts III and IV for reformation or rescission. As explained below, declaratory relief on Count II is warranted in favor of Windward.

## SUMMARY JUDGMENT STANDARD

"In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party." *Castel v. City of Naples*, 2:12-CV-581-FTM, 2013 WL 6798561, at *4 (M.D. Fla. Dec. 23, 2013). "At 'the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (*citing Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012)). "Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper." *Id.*

## INSURANCE POLICY CONSTRUCTION FOR COUNT II OF THE COMPLAINT

The tornado occurrence is a covered peril under the policy United issued to Windward. [Sykes Dep. 84:10-15 DE 44-8; Dunn Dep. 148:20-23 DE 44-3]. The only substantial issue remaining for coverage is the interpretation of the policy regarding vacancy. *See Id.*

1. **The Plain Reading of the Policy Covers Condominium Association Property and Not Exclusively Owned and Occupied Condominium Units**

United cites general authority for interpreting insurance policies, however, it leaves out several critical, well-established rules that do not favor its strict and broad interpretation of a policy exclusion. Windward agrees that insurance policy interpretation is a question of law for

the Court, analysis starts with the plain meaning of terms, unambiguous terms are enforced as written, and that policies must be read as a whole. In addition to these rules, the policy should receive a, "reasonable, practical and sensible interpretation." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002). Coverage terms are construed broadly to effect the indemnification purpose of an insurance policy. *See Estate of Tinervin v. Nationwide Mut. Ins. Co.*, 23 So. 3d 1232, 1236 (Fla. 4th DCA 2009). Exclusions are construed strictly and narrowly, again to effect the purpose of an insurance policy. *See Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005); *Triano v. State Farm Mut. Auto. Ins. Co.*, 565 So. 2d 748, 749 (Fla. 3d DCA 1990); *Florida Farm Bureau Ins. Co. v. Birge*, 659 So. 2d 310, 311 (Fla. 2d DCA 1994). Insurance policies are generally contracts of adhesion that must be interpreted in favor of the insured. *Harrington v. Citizens Prop. Ins. Corp.*, 54 So. 3d 999, 1004 n1 (Fla. 4th DCA 2010) (citing *Pasteur Health Plan, Inc. v. Salazar*, 658 So. 2d 543, 544 (Fla. 3d DCA 1995)).

There are no facts in dispute regarding interpretation of the insurance policy as requested by Count II. The policy says what it does. However, United's interpretation of the policy is incorrect. In contravention of established principles of policy construction, United broadly construes the vacancy endorsement in such a way that requires absolute vacancy of the entire property at 7818 Daetwyler Drive, Belle Isle, Florida. United's broad construction of the vacancy exclusion flies in the face of condominium law and ownership. The vacancy endorsement states that, "[w]e will not pay for loss or damage at any designated premises that is not vacant when the loss or damage occurs." [DE 44-2, p. 95]. Windward, however, is not claiming damage to property that is owned or occupied by someone else, specifically individual unit owners.

The policy, you see, only covers the condominium association's property. [DE 44-2, pp. 41, 51, 52]. The condominium association's property, by operation of law, is only the common

areas owned by the association, and not individual units. *See Costa Del Sol Ass'n, Inc. v. State, Dept. of Bus. & Prof'l Regulation, Div. of Florida Land Sales, Condominiums, & Mobile Homes*, 987 So. 2d 734, 736 (Fla. 3d DCA 2008); Fla. Stat. § 718.103; Fla. Stat. § 718.111. Individually and exclusively owned and occupied condominium units are not Windward's insured property by operation of law. *See id.* Thus, the only plain, reasonable, practical and sensible reading of Windward's policy is to cover property that is owned by the association that remains vacant, to wit, the common elements. United, however, seeks to punish Windward because units that were never owned by Windward and never insured by United have residents living in them, and asks the Court to declare that Windward forfeits all insurance simply because the developer sold units as disclosed in Windward's application.

Windward's policy does not purport to cover individual units that are exclusively owned and occupied by individual unit owners, and United cannot escape liability for the property that Windward owns that was damaged by tornado just because the developer sold some units to new owners. United's broad interpretation of the vacancy requirement that requires absolute vacancy of every inch of the association is nothing more than a "gotcha" to avoid liability for Windward's tornado claim.

 2. **The Policy Must Conform to Florida Condominium Insurance Law, Specifically, Fla. Stat. § 718.103 and Fla. Stat. § 718.111**

"It is not unheard of for the legislature to pass a law and an insurance company not recognize the law and issue a policy not in conformance therewith. In a case such as this, this court has written into the policy a provision to comply with the law." *U. S. Fire Ins. Co. v. Van Iderstyne*, 347 So. 2d 672, 673 (Fla. 4th DCA 1977). "When an insurance policy does not conform to the requirements of statutory law, a court must write a provision into the policy to

GEYER FUXA TYLER, PLLC
490 Sawgrass Corporate Parkway, Ste 110, Sunrise FL 33325
(954) 990-5251; Fax (954) 990-4346

comply with the law, or construe the policy as providing the coverage required by law." *Auto-Owners Ins. Co. v. DeJohn*, 640 So. 2d 158, 161 (Fla. 5th DCA 1994). "Insurance policies are deemed by law to incorporate applicable statutes." *MRI Associates of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1210 (M.D. Fla. 2010). "[P]rovisions in an insurance policy must be construed and applied to be in full compliance with the Florida Statutes." *Trinidad v. Florida Peninsula Ins. Co.*, 121 So. 3d 433, 441 (Fla. 2013); *see also, Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 896 (Fla. 2003). Florida condominium associations do not and cannot insure exclusively and individually owned condominium units. *See Costa Del Sol Ass'n, Inc.*, 987 So. 2d at 736.

In *Trinidad*, the insurer interpreted an insurance policy's Replacement Cost provision to only require benefits payments in the amount actually spent to effect repairs. 121 So. 3d at 442. The Florida Supreme Court invalidated that interpretation because it was contrary to Fla. Stat. § 627.7011 that required payment of replacement cost benefits even if an insured did not perform repairs. *Id.* at 443. In *Kaklamanos*, the insurer interpreted the policy's Unreasonable or Unnecessary Medical Expenses provision to allow it to refuse to pay for medical expenses it deemed unnecessary. 843 So. 2d at 895. The Florida Supreme Court invalidated that interpretation because it was contrary to Florida's No-Fault Insurance statutes. *Id.* at 897. In *Costa Del Sol Ass'n, Inc.*, the Department of Business and Professional Regulations declared that certain property purchased, installed, and usable only by individual unit owners was "condominium property" that must be insured by the condominium association. 987 So. 2d at 735. In a scathing opinion that reversed the declaration, the court held that the association and other members, "have no insurable interest which would even permit their maintenance of valid insurance" on individually owned property. *Id.* at 736.

GEYER FUXA TYLER, PLLC
490 Sawgrass Corporate Parkway, Ste 110, Sunrise FL 33325
(954) 990-5251; Fax (954) 990-4346

6

Count II of Windward's Complaint seeks to have the Court conform the policy to Florida law and statutes. [DE 2, p. 7]. Interpreting Windward's Policy to require absolute vacancy of the entire property at 7818 Daetwyler Drive, Belle Isle, Florida, would not be in full compliance with Florida condominium statutes. Florida condominium statutes permit and encourage the sale of units, and require that condominium insurance provide coverage for common elements while excluding coverage for individually owned units:

> Fla. Stat. § 718.111(11) Insurance
> --In order to protect the safety, health, and welfare of the people of the State of Florida and to ensure consistency in the provision of insurance coverage to condominiums and their unit owners, this subsection applies to every residential condominium in the state, regardless of the date of its declaration of condominium. It is the intent of the Legislature to encourage lower or stable insurance premiums for associations described in this subsection.
> …
> (f) Every property insurance policy issued or renewed on or after January 1, 2009, for the purpose of protecting the condominium must provide primary coverage for:
> 1. All portions of the condominium property as originally installed or replacement of like kind and quality, in accordance with the original plans and specifications.
> …
> 3. The coverage must exclude all personal property within the unit or limited common elements, and floor, wall, and ceiling coverings, electrical fixtures, appliances, water heaters, water filters, built-in cabinets and countertops, and window treatments, including curtains, drapes, blinds, hardware, and similar window treatment components, or replacements of any of the foregoing which are located within the boundaries of the unit and serve only such unit. Such property and any insurance thereupon is the responsibility of the unit owner.

This is required for the purpose of protecting the safety, health, and welfare of Florida residents. United is well aware of Florida condominium insurance law, alludes to the dichotomy between condominium association and unit owner's insurance in its Motion, and even questioned Windward's retail insurance agent about it during deposition. [DE 43 ¶ 10, 20, § V.B. pp. 23-24; Underwood Dep. 200:7-201:13 DE 44-14]. United's interpretation that the policy requires

absolute vacancy would preclude the developer from actually selling units, something that United knew was being done from the time of original underwriting in 2011. [Sykes Dep. 33:2-19 DE 44-8]. Worse, yet, United's interpretation of the policy would prohibit unit owners from actually using or enjoying the homes that they purchased in order for the association to retain insurance for common areas. The only reasonable, practical, and sensible interpretation that conforms with Florida Statutes is not to read the contract in such a way that requires absolute vacancy of units not owned by Windward or insured by United, but to read it in such a way that excludes coverage for the parts of the building that are not the property of the association and are not insured by United, *i.e.* the particular condominium units sold to individual purchasers.

The Court must construe the policy in conformity with Florida condominium insurance law that requires coverage for common elements and excludes coverage for individually owned or occupied units. This interpretation invalidates any purported absolute vacancy requirement and results in full coverage for Windward's tornado loss. Permitting an out-of-state insurer to come into Florida and issue a condominium policy that prohibits a condominium from doing what condominiums do - maintaining common areas for the benefit of individual unit owners - would turn Florida condominium insurance on its head, and not be in the best interest of the health, safety, or welfare of Florida residents.

### 3. Application Terms Control Because They Result in Greater Indemnity

In violation of established rules of policy construction, United asks the Court to isolate three sentences in a single endorsement and render judgment on these sentences read in a vacuum. [DE 43, § II.C., p. 11]. However, "a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders." *Gen. Star*

*Indem. Co. v. W. Florida Vill. Inn, Inc.*, 874 So. 2d 26, 30 (Fla. 2d DCA 2004); *Mathews v. Ranger Ins. Co.*, 281 So. 2d 345, 348 (Fla. 1973). "Where the policy is 'amplified, extended, or modified' by inconsistent terms or conditions in the application, the inconsistent provisions are not disregarded. Rather, the policy is then construed taking into consideration those provisions." *State Farm Mut. Auto. Ins. Co. v. Mallard*, 548 So. 2d 733, 735 (Fla. 3d DCA 1989). United trumpets the endorsement and ignores the application, but under Florida law, "the application becomes a part of the agreement between the parties and the policy and the application taken together constitute the contract of insurance." *Quick v. Nat'l Indem. Co.*, 231 So. 2d 22, 25 (Fla. 4th DCA 1970); *Zenith Ins. Co. v. Commercial Forming Corp.*, 850 So. 2d 568, 570 (Fla. 2d DCA 2003).

When there are conflicts between the application and the policy, the terms of the policy control, unless, "the provisions of the application would result in greater indemnity." *Mathews*, 281 So. 2d at 349. In these circumstances, "the provisions of the application will control." *Joseph Uram Jewelers, Inc. v. Liberty Mut. Fire Ins. Co.*, 273 So. 2d 111, 113 (Fla. 3d DCA 1972). In *Mallard*, the insurer sought to avoid payment of automobile injury benefits on the basis that the policy did not insure any persons, but rather a corporation. 548 So. at 734. The application for insurance listed the claimant's parents as drivers to be insured, but the policy did not list any. *Id.* at 735. The Court construed the policy together with the application to find coverage for the injured daughter's claim, stating that any other holding would encourage insurance policies that, "generate revenue by implying coverage while, simultaneously, avoiding the underlying liability." *Id.*

In Windward's case, Windward did not check the box on the application to attach a "VACANT BUILDING SUPPLEMENT" because Windward was not applying for insurance

that required the buildings to be absolutely vacant, but was applying for insurance to cover association owned property. [DE 42-15, p. 1; Dunn Dep. 85:4-86:15 DE 44-3; Sirang Aff. ¶¶ 8-9 DE 45]. Windward unequivocally stated in its application under "DESCRIPTION OF PRIMARY OPERATIONS" that the operations were "residential" and did not state "vacant" as would be done if the property was vacant. [DE 42-15, p. 2; Dunn Dep. 85:4-86:15 DE 44-3]. Windward plainly advised United in the application that the property was "very well maintained," and that units were, "being sold by developer." [DE 42-15, p. 5]. The application provisions directly conflict with United's reading of the endorsement that allegedly requires absolute vacancy. The terms of the application cannot be disregarded under Florida law, and this conflict must be reconciled. Since the terms of the application would permit maintenance of the property and the sale of units, the application results in greater indemnity for Windward and the application controls over the endorsement. *Mathews*, 281 So. 2d at 349.

Again, the only reasonable, practical, and sensible interpretation is not to read the contract to require absolute vacancy, but to read it to only exclude coverage for parts of the property that the association does not own, *i.e.* the particular condominium units that are sold to individual purchasers. To hold otherwise would result in a forfeiture of the entire policy. Florida law abhors forfeiture of insurance policies, especially after an event has given rise to an insurer's liability. *See LeMaster v. USAA Life Ins. Co.*, 922 F. Supp. 581, 585 (M.D. Fla. 1996) (citing *Johnson v. Life Ins. Co*, 52 So. 2d 813, 815 (Fla. 1951).

4. **United's Absolute Vacancy Interpretation Leads to Vague, Ambiguous, and Illusory Coverage, as well as an Absurd Result**

Policy terms are not to be construed in such a way that would make coverage illusory. *See Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997).

Application forms in the policy specifically state that the property was "very well maintained" and the individual units were, "being sold by developer." [DE 42-15, p. 5]. United's interpretation of the vacancy endorsement would permit the developer to show units to potential buyers, but would void all insurance if the developer actually followed through after a showing to complete a sale. Such an assertion is nonsensical and leads to illusory coverage and an absurd result that a condominium loses insurance on common elements if units are sold to individual purchasers. "[I]nsurance policies will not be construed to reach an absurd result." *Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998).

At the very least, the vacancy provision is vague, ambiguous, and unenforceable as such. Policy language, "is considered to be ambiguous ... if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). If there is an ambiguity in the policy, it must be construed *contra proferentem*, or against the drafting party. *See Fayad*, 899 So. 2d at 1086. The Court may not resort to extrinsic evidence if the Policy is ambiguous, but must automatically rule for the insured. *Ruderman*, 117 So. 3d at 952.

As discussed above, United is examining the vacancy endorsement in isolation and out of context with the application and rest of the policy, imposing an absolute vacancy requirement that would render coverage void if Windward were to perform maintenance, security inspections, customary operations, or let the developer actually sell a condominium unit. In other words, under United's interpretation, as soon as the ink hits the paper on a contract of sale for a condominium unit, Windward forfeits all insurance coverage for common elements. Windward's interpretation is one that considers the application, the rest of the policy, ownership, insurability,

11
GEYER FUXA TYLER, PLLC
490 Sawgrass Corporate Parkway, Ste 110, Sunrise FL 33325
(954) 990-5251; Fax (954) 990-4346

and complies with Florida Statutes as required by Florida law. United's interpretation limits and excludes coverage for Windward's tornado loss, and Windward's interpretation provides coverage. Because there are two competing interpretations, the Court must automatically rule in favor of coverage, and may not resort to extrinsic evidence to resolve the ambiguity. *Ruderman*, 117 So. 3d at 952.

United's cited case law holding other vacancy provisions unambiguous is inapposite to the facts of Windward's case. Not one of United's cases addresses the dichotomy between condominium association and unit owner property and how that affects insurance coverage. United argues that no patent or latent ambiguity can exist, but it ignores the very real question that arises when condominium units that are not the association's property and not insured by the insurer, are occupied. Can an insurer make condominium association insurance contingent upon the vacancy of property that the association does not own or control and the insurer does not insure? Windward explained above how occupied units are not owned by Windward, not controlled by Windward, and not insured by United, and are therefore not applicable to any conditions in the insurance policy. United, however, asserts that condominium units that Windward does not own or control, and United does not insure, must stay vacant for Windward to have coverage for association owned property. This is the very definition of a latent ambiguity, and the Court must automatically rule in Windward's favor without resorting to extrinsic evidence.

## **REFORMATION**

If the Court interprets the policy in conformity with Florida laws and statutes as required and described above, it need not reach the alternative argument that the policy should be reformed to establish coverage for Windward's tornado loss. However, should the Court interpret

the policy strictly as United proposes, and not in conformity with Florida Statutes as required by Florida law, the Court should reform the policy to remove the vacancy endorsements just as United did after the loss. However, in all candor to the tribunal, summary judgment is not proper on reformation for either party because genuine issues of material fact remain in dispute.

1. **Reformation Standard**

"[E]quity abhors a forfeiture, and will always relieve against it when it can be done without doing violence to the contract between the parties." *Hemphill v. Pesat*, 123 So. 561, 563 (Fla. 1929); *see also, Jones v. New York Guar. & Indem. Co.*, 101 U.S. 622, 628 (1879). "Reformation of a contract is proper if the plaintiff establishes by clear and convincing evidence that the contract is the product of (1) the parties' mutual mistake, or (2) a mistake on the part of one party coupled with the inequitable conduct on the part of the other party." *Bone & Joint Treatment Centers of Am. v. HealthTronics Surgical Services, Inc.*, 114 So. 3d 363, 366 (Fla. 3d DCA 2013). Florida courts may grant reformation on several grounds: fraud, inequitable conduct, accident, inadvertence, and mutual mistake. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 8 F.3d 760, 765 (11th Cir. 1993); *Niagara Fire Ins. Co. v. Allied Elec. Co.*, 319 So. 2d 594, 595 (Fla. 3d DCA 1975). "In ascertaining whether a mistake actually exists, it is essential to determine the contemplations of the parties at the time the contract was reduced to writing." *Old Colony Ins. Co. v. Trapani*, 118 So. 2d 850, 852 (Fla. 2d DCA 1960).

United's Motion puts the cart before the horse, and asserts that because Windward has not met its trial burden, judgment should be granted to United summarily. A Plaintiff should be given the opportunity to present evidence at a non-jury trial to establish a prima-facie case for reformation. *See Robinson v. Wright*, 425 So. 2d 589, 589 (Fla. 3d DCA 1982); *see also, Old*

GEYER FUXA TYLER, PLLC
490 Sawgrass Corporate Parkway, Ste 110, Sunrise FL 33325
(954) 990-5251; Fax (954) 990-4346

*Colony Ins. Co. v. Trapani*, 118 So. 2d 850, 851 (Fla. 2d DCA 1960). Factual presentation and permissible inferences are sufficient to establish genuine issues of material fact to preclude summary judgment on a reformation claim. *Noack v. Blue Cross & Blue Shield of Florida, Inc.*, 859 So. 2d 608, 611 (Fla. 1st DCA 2003). "Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012).

2. **Genuine Issues of Material Fact Preclude Summary Judgment on Reformation**

Through the deposition testimony that has been filed as part of the record that is available to the Court, multiple facts have been established that would warrant reformation in Windward's favor. However, conflicting testimony prohibits summary judgment because the Court would have to weigh the evidence and credibility of the witnesses, which is, "simply improper." *Strickland*, 692 F.3d at 1162. A summary of the record facts and testimony that support a prima-facie reformation are as follows:

- The Parties understood, intended, and agreed at the initial underwriting in 2011 that the buildings were vacant and that individual units were, "being sold" to individual unit owners by the developer. [DE 42-15, p. 5; Sykes Dep. 33:5-12 DE 44-8; Underwood Dep. 200:7-15 DE 44-14].
- Once individual units were sold, it was in the broker's sole discretion whether to advise United of the sale. [Dunn Dep. 101:21-102:11 DE 44-3].
- Windward's retail agent sent the closing documents for the sale of the first unit on to the broker. [Underwood Dep. 43:19-44:24 DE 44-13; Underwood Dep. 202:25-203:8 DE 44-14].
- The broker notified United of the sale of individual units and their subsequent occupancy during the 2012 policy renewal. [Guthrie Dep. 40:9-41:18, 44:7-9, 72:3-9 DE 44-1].

- Once notice of the sale of individual units is received by United, it is United's underwriter's <u>sole discretion</u> whether to endorse or revise the policy. [Dunn Dep. 57:12-58:8 DE 44-3; Sykes Dep. 53:14-54:7, 114:18-115:23 DE 44-8].

    > **Q.** **So if a broker asked you, Hey, I don't want that form in this policy, you didn't – that was your decision whether you wanted to leave it in or take it out?**
    > **A.** **Correct.**
    > [Dunn Dep. 40:9-13 DE 44-3].

    > **Q.** **And it's your sole discretion as the underwriter as to what needs to be done once you've been advised of the change in circumstances?**
    > **A.** **Correct.**
    > [Dunn Dep. 58:5-8 DE 44-3].

- United, in its sole discretion, did not revise or endorse the policy to remove the vacancy endorsements. [DE 42-19].

- United National should have removed the vacancy endorsements during the 2012 renewal. [Guthrie Dep. 79:10-13, 80:11-19, 106:20-25 DE 44-1].

- Windward's agent expressly requested that the vacancy endorsements be removed just days before the tornado. [Underwood Dep. 71:20-72:4; 82:11-84:7 DE 44-13].

- United has an established business pattern and practice of honoring policy change requests effective the date requested by the agent, even if the request is not received by United until later. [Guthrie Dep. 27:7-25, 28:1-16 (July 13, 2011, change request made effective June 28, 2011) DE 44-1 Guthrie Dep. 29:15-30:1, 30:5-12 (August 24, 2011, change request made effective June 16, 2011) DE 44-1; Guthrie Dep. 51:2-16, 51:20-52:4 (June 29, 2012, change request made effective June 16, 2012) DE 44-1; Guthrie Dep. 66:8-67:1 (May 9, 2013, change request made effective May 1, 2013) DE 44-1].

    > **Q.** **So if a request to change came in on, for example, May 1st and said please make this**

> **change effective April 1st, a month earlier, your response would be?**
> A. **My response would be did the request come in on April 1st or shortly after from the insured? Ad if it did I would honor it.**

[Dunn Dep. 123:3-9 DE 44-3].

- United retroactively reformed the policy to remove the vacancy endorsements after the tornado, but refuses to reform back to the date that the broker advised United of occupancy or that the agent requested the policy forms be removed. [Guthrie Dep. Ex. 13 DE 44-2 p. 35; Dunn Dep. 123:13-124:22, 144:12-145:15 DE 44-3; Sykes Dep. 34:4-21, 57:7-58:5, 89:24-90:12 DE 44-8].

- Windward paid nearly $40,000.00 in insurance premiums to United for condominium insurance. [Sirang Aff. ¶ 10 DE 45].

- Windward paid higher insurance premiums than necessary for occupied buildings. [Sykes Dep. 35:5-7 DE 44-8; Underwood Dep. 56:3-12, 112:12-113:13 DE 44-13].

- United charged and Windward paid for a property inspection in 2012 that United never completed. [Underwood Dep. 23:17-24:2, 73:9-74:12, 77:2-7, 121:11-122:10, 179:11-18 DE 44-13].

- Had United inspected in 2012, it would have found that individual units had been sold to unite owners and were occupied. [Sykes Dep. 119:11-14 DE 44-8; Underwood Dep. 178:21-25 DE 44-13].

- Appalachian attempted to refund the inspection fee for United's unperformed inspection, but not until after the tornado loss. [Underwood Dep. 176:4-178:7 DE 44-13].

- United attempted to avoid payment of Windward's tornado claim on the basis that the damage was below the deductible, that the roof was improperly installed, and that there was no tornado. [Underwood Dep. 90:2-119:17 DE 44-13].

Nevertheless, and in all candor to the Court, United disputes having received "official" knowledge of the sale of individual units until after the tornado. [Sykes Dep. 87:8-25 DE 44-8]. United has no direct evidence to contradict testimony that it was told of the occupancy, it just asserts there is nothing in its file to corroborate the broker's testimony. [Dunn Dep. 119:3-17 DE 44-3; Sykes Dep. 43:14-18, 71:9-12 DE 44-8]. The broker disputes that the agent's request to remove the vacancy endorsements was specific enough to warrant his passing the request onto United. [Guthrie Dep. 72:17-22, 76:3-15 DE 44-1]. Should the Court venture through the several days' worth of deposition transcripts that have been filed, it will find the agent, broker, and insurer, each placing the blame on the other two for mistakes and any failure to effect the insurance that Windward applied for. [DE 44-1, 44-3, 44-8, 44-13, 44-14]. The inequitable conduct necessary to support reformation with a unilateral mistake is present in United's receipt and acceptance of nearly $40,000.00 in insurance premiums for a policy that United asserts provides no coverage since one week after initial binding, failure to exercise its discretion to revise the policy after receiving notice of occupancy of individual condominium units, and reliance on the same provision as a basis for denying benefits outright. Additionally, United collected a higher premium when the risk was actually substantially less due to the fact that part of the property was not owned Windward or insured by United, and was occupied so damage could be caught early and prevented from getting worse. [Dunn Dep. 33:25-34:10, 35:17-21, 104:6-105:9 DE 44-3]. United also seriously mishandled the claim adjustment. [Underwood Dep. 90:2-119:17 DE 44-13]. Summary judgment would require the Court to weigh each deponent's credibility to determine who knew what and by when in order to determine whether there is a sufficient basis to reform the policy. Weighing evidence and credibility is not proper for

summary judgment, and should be done through a bench trial on the merits. *See Strickland*, 692 F.3d at 1162; *Robinson*, 425 So. 2d at 589; *Trapani*, 118 So. 2d at 851.

## RESCISSION

As an absolute last resort, should this Honorable Court not interpret the policy in Windward's favor, and decline to exercise equitable jurisdiction to reform the policy, the Court should not permit United to retain nearly $40,000.00 in insurance policy premiums if the policy truly required every inch of 7818 Daetwyler Drive, Belle Isle, Florida, to stay absolutely vacant for coverage to attach. In Florida, courts may grant rescission of a written instrument if there has been fraud, mistake, "or some other independent ground for equitable interference." *Willmont v. Tellone*, 137 So. 2d 610, 612 (Fla. 2d DCA 1962). Rescission can be granted if enforcing a written instrument would be inequitable or unjust. *Hartsfield v. Williams*, 200 So. 220, 222 (Fla. 1941). Again, the Court would be required to weigh the evidence and credibility of each of the deponents and witnesses before issuing judgment on reformation, which is required before reaching the issue of rescission. Judgment on rescission alone would require the Court to weigh the evidence and credibility of deponents and witnesses before reaching a final decision on whether enforcing the written instrument would be inequitable or unjust. Thus, summary judgment is wholly improper on rescission.

Regarding United's request that the Court deny attorneys' fees and costs if rescission is granted, there is no authority for United's proposition. Based on the posture of the case, the Court must decline to address fees until after "a judgment or decree" has been obtained. *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1051 (Fla. 2008); *see also* Fed. R. Civ. P. 54(d)(2)("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."). Some fees

have been stipulated to be resolved at the conclusion of the case. [DE 36 ¶ 3; DE 37]. Costs will necessarily be addressed separately. Fed. R. Civ. P. 54(d)(1). As such, the Court may not impose judgment for fees or costs at this juncture.

## UNITED'S ALTERNATIVE ARGUMENTS

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998). United offers two erroneous alternative arguments that the policy does not cover loss caused by mold or the interior of individually owned condominium units. [DE 43, pp. 22-24]. Windward has never requested that United pay for damage caused by mold or to the interior of individually owned condominium units as defined by Florida condominium law. Much to the opposite, Windward is requesting that the Court interpret the policy in such a way that excludes damage for the interiors of individually owned condominium units. Summary judgment must be denied on United's alternative arguments because they are not ripe for adjudication.

## CONCLUSION

The policy was intended to cover Windward's property while the developer was selling units to individual unit owners. The only reasonable, sensible, and practical interpretation of the policy that includes the application and is in conformance with Florida condominium statutes renders coverage for Windward's tornado claim. United should not be allowed to escape liability on a "gotcha," and summary judgment is improper on reformation and rescission.

WHEREFORE, The Windward on Lake Conway Condominium Association, Inc. respectfully requests that the Court deny United National Insurance Company's Motion for Summary Judgment, and for any and all further relief deemed just by the Court.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), The Windward on Lake Conway Condominium Association, Inc., respectfully requests that the Court hear oral argument prior to any dispositive ruling. Windward estimates the time required for argument shall be no more than thirty (30) minutes.

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing document is being served this day to all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

> **GEYER FUXA TYLER, PLLC**
> 490 Sawgrass Corporate Parkway, Ste. 110
> Sunrise, FL 33325
> Phone: (954) 990-5251; Fax: (954) 990-4346
> *Attorneys for Plaintiff*
> Email: jeremy.tyler@gftlawfirm.com
> Email: wyn.geyer@gftlawfirm.com
> Email: hillary.cohen@gftlawfirm.com
>
> By: */s/ Jeremy Tyler*
> Jeremy F. Tyler, Esq.
> Florida Bar No.: 77115
> Hillary Cohen, Esq.
> Florida Bar No. 31005
> W. Wyndham Geyer, Jr., Esq.
> Florida Bar No.: 330418