**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

THE WINDWARD ON LAKE CONWAY
CONDOMINIUM ASSOCIATION, INC.,

      Plaintiff,

v.                                   Case No. 6:14-cv-607-Orl-37KRS

UNITED NATIONAL INSURANCE
COMPANY; and APPALACHIAN
UNDERWRITERS, INC.

      Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendant United National Insurance Company's Dispositive Motion for Summary Judgment (Doc. 43), filed March 2, 2015;

2. Plaintiff's Memorandum in Opposition to Defendant United National Insurance Company's Dispositive Motion for Summary Judgment (Doc. 46), filed March 16, 2015;

3. Defendant United National Insurance Company's Reply Memorandum in Support of its Motion for Summary Judgment (Doc. 48), filed March 30, 2015; and

4. Plaintiff's Notice of Filing Supplemental Authority (Doc. 52), filed September 3, 2015.

**BACKGROUND**

Presently, there are two issues before the Court: (1) first, whether a surplus line commercial insurance policy on specified buildings in a condominium complex—Policy No. VB0762792 ("**Policy**")—covers losses that the insured suffered when a tornado struck the complex in **March 2013**; and (2) second—if the Policy does not cover the losses—whether the insured is entitled to equitable remedies. (*See* Doc. 2.) Defendant United National Insurance Company ("**United**") raises these two issues in its Motion for Summary Judgment. (Doc. 43.) The insured—The Windward on Lake Conway Condominium Association, Inc. ("**Windward**")—filed a response (Doc. 46), and United replied (Doc. 48). Upon consideration, the Court finds that the first issue is due to be resolved in favor of United as a matter of law, but questions of fact concerning the second issue cannot be resolved without a bench trial.

**THE FACTS VIEWED IN THE LIGHT MOST FAVORABLE TO WINDWARD[1]**

**I.    United's Issuance of the Policy**

Windward owns real and personal property located in Belle Isle, Florida, which it has developed as a condominium complex. (*See* Doc. 2, ¶ 2; Doc. 8, ¶ 2.) In the spring of 2011, Windward engaged the services of Underwood Insurance Agency ("**Agent**") to obtain commercial insurance coverage—including wind coverage—for the complex,

---

[1] In resolving United's Motion for Summary Judgment, the Court has construed the record evidence in the light most favorable to Windward—the non-moving party. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). The Court's review of the record evidence was greatly complicated by the parties' duplicative submissions of virtually every document at issue. To simplify matters for the reader, the Court selected one version of each document and endeavored to cite to that document throughout this Order. Going forward, the parties are directed to cease filing duplicative and poor-quality documents with the Court.

which was vacant at the time. (*See* Doc. 44-14, 7:23–9:15; Doc. 46, p. 14 (admitting that "[t]he parties understood, intended and agreed at the initial underwriting in 2011 that the [premises] were vacant"); *see also* Doc. 44-1, 17:11–18:2).) In a written application, Windward's "primary operations" were described as five "buildings" which were built in 2009 and included twenty-nine condominium "units" ("**Premises**"). (*See* Doc. 42-7 ("**Application**"); Doc. 44-14, 10:6–10:17, 16:15–16:23; *see also* Doc. 42-19, pp. 2, 16, 17 (listing addresses for each of the five buildings).) The "Property Section" of the Application further advised that the "units" were "being sold." (Doc. 42-7, p. 5.)

Agent submitted the Application to an insurance broker—Appalachian Underwriters, Inc. ("**Broker**")—and Broker submitted the Application to United. (*See* Doc. 44-14, 10:6–10:17, 16:15–16:23; *see also* Doc. 44-1, 9:3–9:19, 13:10–14:6, 15:1–15:20, 18:16–18:23.) United accepted the Application and issued a "surplus line" quote ("**Quote**").[2] (*See* Doc. 44-2, pp. 122–25; Doc. 44-1, 19:1–19:2, 144:7–145:3.) Broker provided the Quote to Agent, who presented the Quote to Windward; Windward accepted the Quote and its acceptance was relayed to United through Agent and Broker; and United then issued the Policy for a one-year term from **June 16, 2011** through **June 16, 2012** ("**Initial Coverage Period**").[3] (*See* Doc. 42-11 (providing a copy of the Policy initially

---

[2] "Surplus-lines insurance is a type of insurance that a potential insured may obtain when the general-lines insurance market fails to provide a policy to cover the type of risk involved. *See* § 626.916(1)(a), Fla. Stat. (2003) (requiring that general-lines agents make a certified, diligent effort to obtain coverage from the general-lines market before resorting to the surplus-lines market)." *Essex Ins. Co. v. Zota*, 985 So. 2d 1036, 1040 n.2 (Fla. 2008). Broker testified that vacant buildings "typically gravitate" to surplus lines insurance policies due to the high risk involved in insuring unoccupied buildings. (*See* Doc. 44-3, 34:3–7.)

[3] The Policy includes a Surplus Lines License Information page as well as a notice to Florida policyholders regarding mandatory fees due to the insured's Surplus Lines Insurance Agent. (*See* Doc. 42-11, pp. 3, 11.)

issued by United); Doc. 44-1, 19:9–19:24; 44-14, 21:6–21:15; *see also* Doc. 8, ¶ 5).)

The Policy—which cost Windward approximately $20,000.00 in premiums—obligated United to "pay for direct physical loss of or damage to" to the Premises "caused by or resulting from any Covered Cause of Loss."[4] (Doc. 42-19, p. 18.) Through an endorsement—Form EPB-115—United's obligation to pay for such loss was conditioned on the requirement that the Premises remain "vacant" during the Initial Coverage Period ("**Vacancy Requirement**"). (*See* Doc. 42-11, p. 52.) The Vacancy Requirement provides that United "will not pay for loss or damage at any designated premises that is not vacant when the loss or damage occurs." (*Id.*) For purposes of the Vacancy Requirement, a building is not "vacant when any portion of it is used for any activity whatsoever except showing it to prospective buyers or renters for the purpose of selling or leasing it" ("**Vacancy Definition**"). (*Id.*)

Although the Premises were vacant during the initial underwriting in 2011, during the Initial Coverage Period, Windward sold individual condominium units and provided documentation of such sales to Broker to transmit to United. (*See* Doc. 46, pp. 1–2; *see also* Doc. 42-2, 199:16–199:24.) Consistent with their practice during the underwriting process, United and Windward communicated exclusively through Agent and Broker

---

[4] This coverage provision is included in the Building and Personal Property Coverage Form of the Policy—CP 00 10 ("**Property Form**"). (Doc. 42-11, p. 19.) "Covered Property" included "the building(s) or structure(s) described in the Declarations" (*id.* at 19), and the Declarations in turn described the Premises (*see id.* at 3, 7, 17–18). "Covered Causes of Loss" meant "risks of direct physical loss" not excluded in section B or limited in section C of the "Causes of Loss - Special Form of the Policy"—CP 10 30. (*See id.* at 34; *see also* Doc. 42-19, pp. 2, 6, 16–18, 33 (providing corresponding policy terms in Policy issued after renewal).)

during and after the Initial Coverage Period. (*See* Doc. 42-2, 199:16–199:24; Doc. 44-1, p. 142:19–143:15.)

## II.     Renewal of the Policy

Through Agent and Broker, Windward applied for a renewal of the Policy in 2012 and it provided information to Agent concerning occupancy rates at the Premises; based on that information—which Agent transmitted to Broker—Broker advised United that the Premises had a thirty-five to forty percent occupancy rate. (*See* Doc. 44-1, pp. 39–40; Doc. 44-2, pp. 19–24 ("**Second Application**"); *see also* Doc. 46, pp. 2, 14.) In exchange for another $20,000.00 in premiums from Windward, United issued the Policy for another one-year term from **June 16, 2012** through **June 16, 2013** ("**Renewal Coverage Period**"). (Doc. 42-19 (providing a copy of the renewed Policy).) Despite apparent knowledge that the Premises could not satisfy the Vacancy Definition, United did not remove the Vacancy Requirement when it issued the Policy for the Renewal Coverage Period. (*See id.* at 34.)

Windward continued to sell condominium units during the Renewal Coverage Period, and on **March 20, 2013**, Agent sent Broker an e-mail advising that: "the buildings are now occupied and United . . . had them rated as 'unoccupied' during" the Renewal Coverage Period. (Doc. 42-21, p. 1 ("**March 2013 E-mail**").) The March 2013 E-mail further advises that "we will need that revised" and reiterates that the "units are 85% occupied so no longer considered vacant." (*Id.*) The March 2013 E-mail concludes with a request to "please make sure the applications are updated to reflect this major change in underwriting as to occupancy code. 100% sprinklered, new construction, now 85% occupied." (*Id.*)

**III.     The Loss and Claim**

Approximately four days after Agent sent Broker the March 2013 E-mail, a tornado struck the Premises and caused water intrusion and damage to the roof of one of the five buildings ("**Damaged Property**"). (Doc. 45, ¶ 11.) Windward ultimately spent more than $100,000 to repair the Damaged Property (**"Loss"**), and it submitted a claim to United for the Loss (**"Claim"**). (*See id.*) Initially, United: (1) denied that a tornado was even in the area at the time Windward claimed; (2) denied that the Loss exceeded the deductible for the Policy; and (3) asserted that any roof damage was caused by faulty installation. (Doc. 44-14, 90:2–91:10, 102:10–102:21, 172:3–172:24.) Ultimately, in correspondence dated **April 16, 2013**, United relied on the Vacancy Requirement to deny the Claim. (*See* Doc. 44-9, pp. 2–4 ("**April 2013 Denial**"); *see also* Doc. 8, ¶¶ 15–16, 20–21, 35, 65.)

Several weeks after the April 2013 Denial, Broker requested that United endorse the Policy to remove the "vacancy clause" and add an occupancy rate of more than 70 percent.[5] (Doc. 42-22.) United issued the requested endorsement—Policy Change No. 3—which had an effective date of **May 1, 2013**, and removed: (1) the Vacancy Requirement; (2) six other forms (CP0450, CP1056, EPA1619, EPB100, EPB102, and EPB145); and (3) the warranty providing that "Vacant Building is fully locked and secured to prevent unauthorized entry." (*See* Doc. 42-19, p. 3.)

---

[5] Broker testified during deposition that it did not consider Agent's March 2013 E-mail to be a definitive request to remove the Vacancy Requirement from the Policy because it was not specific enough to constitute an endorsement request. (*See* Doc. 42-4 at 54:4–54:22, 55:14–55:23, 56:12–56:15, 60:18–60:22, 64:24–66:7, 72:17–72:22, 76:3–76:15, 107:11–107:16. 142:11–142:15.)

**IV.    This Action**

Dissatisfied with the denial of its Claim, Windward initiated this action in state court against United and Broker. (Doc. 2.) On **April 17, 2014**, the action was removed to this Court based on diversity jurisdiction. (Doc. 1). Windward asserts two negligence claims against Broker (Counts V & VI (Doc. 2, ¶¶ 73–100)), and it asserts four claims against United for breach of contract (Count I), declaratory judgment as to coverage (Count II), reformation (Count III), and rescission (Count IV). (*id.*, ¶¶ 8–72.) Broker asserted a crossclaim seeking contractual and common law indemnification from United for Windward's claims ("**Crossclaim**"). (*See* Doc. 8, pp. 10–14.) On December 17, 2014, this Court entered an Order abating the Crossclaim and Windward's claims against Broker pending resolution of Windward's claims against United. (Doc. 39.)

On March 2, 2015, United moved for summary judgment (Doc. 43), Windward responded (Doc. 46), and United replied (Doc. 48). On September 4, 2015, the parties appeared before the Court and argued their respective positions, and the Court took the matter under advisement. (Doc. 53.) As noted above and further explained below, Defendant has not prevailed entirely on its Motion; thus, the Court will hold a final pretrial conference on November 16, 2015, and a bench trial is presently set for the December 7, 2015 trial term. (Docs. 54, 57.)

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*,

247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* As previously noted (*supra* note 1), the Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle*, 468 F.3d at 759. However, the Court should not deny summary judgment "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

**I.    Legal Claims**

Windward asserts its legal claims against United in Counts I and II of the Complaint.[6] (Doc. 2, ¶¶ 8–45.) Because the facts concerning Counts I and II are not in dispute,[7] Windward cannot prevail on either claim unless its interpretation of the Policy—particularly the Vacancy Requirement—is correct.

---

[6] In Count I, Windward claims that United breached the Policy when it denied the Claim, and Windward suffered damages as a result of the breach. (Doc. 2, ¶¶ 8–30.) In Count II, Windward seeks several declarations concerning the Policy, including that the Vacancy Requirement either is invalid and unenforceable or it is ambiguous and must be construed in favor of Windward. (*See id.* ¶¶ 37–43.)

[7] Specifically, during the Renewal Coverage Period (in March 2013), a building identified on the Declarations to the Policy—which was not vacant—suffered direct physical damage (water incursion and roof damage) due to a "Covered Cause of Loss" (a tornado).

8

Interpretation of insurance policies is a question of law to be resolved by the Court, who must read the Policy "as a whole, endeavoring to give every provision its full meaning and operative effect." *See Morales v. Zenith Ins. Co.*, 714 F.3d 1220, 1227 (11th Cir. 2013) (citing *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)); *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008). Generally, plain meaning controls, and the Court "may resort to construction" only if the Policy language "in its ordinary meaning is indefinite, ambiguous, or equivocal." *See U.S. Fire Ins. Co. v. Morejon*, 338 So. 2d 223, 225 (Fla. 3d DCA 1976); *see also Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Policy language is ambiguous if it is "susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage." *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 513 F. App'x 927, 931 (11th Cir. 2013). Finally, the Court must strictly construe ambiguous provisions "in favor of coverage"—especially if the ambiguous provision is part of an exclusionary clause. *See Morales*, 714 F.3d at 1227 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)); *Fayad*, 899 So. 2d at 1086 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).

United argues that the Policy is unambiguous, and coverage is excluded when the plain meaning of the Vacancy Requirement is given effect. (Doc. 43, pp. 9–13.) Windward counters that the Vacancy Requirement creates a latent ambiguity and should therefore be interpreted in its favor. (*See* Doc. 46, p. 4–12.) Only United's argument is supported by the crucial language, which is clear on its face and excludes coverage for Windward's Loss—United "will not pay" for loss "at any designated premises" if—when the loss occurs—"any portion" of a building "is used for any activity whatsoever except showing it

to prospective buyers or renters for the purpose of selling or leasing it."[8] (Doc. 42-19, p. 53.)

Notwithstanding this definite and unequivocal language, Windward contends that the Vacancy Requirement is subject to a different interpretation—namely that the terms "designated premises" and "building" refer only to the "common elements" of the Premises—not the condominium units. (*See* Doc. 46, p. 8.) Since only the condominium units were occupied, Windward contends that the Vacancy Requirement would not exclude coverage as to the "common elements." (*See id.*) This interpretation simply is not supported by the Policy language. The Policy does not reference individual units; rather, it defines the Covered Property as five individual buildings located at five distinct physical addresses. (Doc. 42-19, p. 23.) Further, even if the Court were to look only to the common elements of the building, the record does not support a finding that no portion of the common elements was used for any activity other "than display to prospective buyers and renters." Thus, even under Windward's alternative reading, the Vacancy Requirement would still exclude coverage for the Loss.[9]

---

[8] *E.g.*, *Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1539 (11th Cir. 1995) (affirming the district court's grant of summary judgment and construing "no ambiguity in the language of the vacancy exclusion"), *Botee v. S. Fid. Ins. Co.*, 162 So. 3d 183, 188 (Fla. 5th DCA 2015) (concluding that the vacancy exclusion was "clear on its face"), *Sunrise Sports Cars, Inc. v. Britamco Underwriters, Inc.*, 782 So. 2d 1009, 1010 (Fla. 4th DCA 2001) (concluding that "the trial court correctly found that the building was indeed vacant for purposes of the exclusionary clause of the policy").

[9] The Court also is not persuaded by Windward's argument that Florida's Condominium Act requires departure from the plain reading of the Policy. Windward represents that Florida Statutes § 718.103 and § 718.111(1) require that condominium associations insure only common areas and exclude individually owned units from association coverage. *Id.* However, Chapter 718 of the Florida Statutes, which is "aptly titled the 'Condominium Act,'" only regulates the insurance obligations of *condominium associations*, not insurers," and is inapplicable here. *Citizens Prop. Ins. Corp. v. River*

Finally, the Court also rejects Windward's argument that the Court must find coverage under the Policy because: (1) application of the Vacancy Requirement renders the coverage under the Policy illusory; and (2) the Application irreconcilably conflicts with, and provides greater coverage than, the Policy. (*See* Doc. 46, pp. 8–10.) "When limitations or exclusions completely contradict the insuring provisions" the coverage is merely illusory. *See Interline Brands, Inc. v. Charits Speciality Ins. Co.*, 749 F.3d 962, 966 (11th Cir. 2014) (quoting *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997). Similarly, when the provisions of an application for an insurance policy and the provisions of the policy "irreconcilably conflict, the policy provision will usually govern"—unless "reliance on the provisions of the application would result in greater indemnity." *See Joseph Uram Jewelers, Inc. v. Liberty Mut. Fire Ins. Co.*, 273 So.2d 111, 113 (Fla. 3d DCA 1972).

According to Windward, the following provisions of the Application irreconcilably conflict with the Vacancy Requirement: (1) the description of Windward's operations as "residential;" (2) the description of the Premises as "very well maintained;" (3) the disclosure that units "were being sold by developer;" and (4) the unchecked box next to the option to attach a "Vacant Building Supplement." (*See* Doc. 46, pp. 9–10; Doc. 44-6, pp. 2–8.) Windward also notes that the buildings are not described as "vacant" in the Application. (*See id.*) The Court does not agree that these provisions foreclose the Vacancy Requirement.

The Policy neither prohibited Windward from maintaining a residential operation, nor selling individual condominium units. Indeed, the Policy allowed Windward to "[show

---

*Manor Condo. Ass'n*, 125 So. 3d 846, 850–51, 853 (Fla. 4th DCA 2013).

11

the Premises] to prospective buyers or renters *for the purpose of selling or leasing it*." (Doc. 42-19, p. 53 (emphasis added).) Further, because the Policy lists five separate buildings in its schedule of covered premises, (Doc. 42-19, p. 17; *see also id.* pp. 2, 16), the Court is persuaded by United's argument that the sale and occupancy of units in one building did not exclude coverage on other buildings. (Doc. 48, p. 3.) As such, the Application and the Policy do not irreconcilably conflict, and the Policy is not illusory.[10]

Because the Vacancy Requirement is unambiguous and the parties do not dispute that the Damaged Building was not "vacant" at the time of the Loss, Windward cannot prevail on Counts I or II as a matter of law, and United's Motion is due to be granted as to these legal claims.[11]

## II.   Equitable Claims

In Counts III and IV, Windward asserts claims in equity for reformation and rescission. (Doc. 2, ¶¶ 46–72.) Under Florida law, "[r]eformation of a contract is proper if the plaintiff establishes by clear and convincing evidence that the contract is the product of (1) the parties' mutual mistake, or (2) a mistake on the part of one party coupled with the inequitable conduct on the part of the other party." *Bone & Joint Treatment Ctrs. of Am. v. HealthTronics Surgical Servs, Inc.*, 114 So. 3d 363, 366 (Fla. 3d DCA 2013). The equitable remedy of rescission is available "upon satisfactory proof of a mistake or other

---

[10] Windward argues that "United's interpretation of the [Vacancy Requirement] would permit the developer to show units to potential buyers, but would void all insurance if the developer actually followed through after a showing to complete a sale." (Doc. 46, p. 11.) The Court again declines to "add meaning that is not present" to the Policy. *See Taurus*, 913 So. 2d at 532.

[11] United offers two alternative arguments in the event that "the Court determines that there is any degree of coverage under the 2012–2013 Policy for Windward's [L]oss." (Doc. 43, p. 22–24.) Because the Court determines there is no coverage for Windward's Loss under the Policy, it declines to address these alternative arguments.

ground upon which relief can be granted." *Flynt v. Progressive Consumers Ins. Co.*, 980 So.2d 1217, 1219 (Fla. 5th DCA 2008). Rescission may be granted if a contract is entered based on a mutual mistake that goes to "the essence of the contract." *See Keystone Creations, Inc. v. City of Delray Beach*, 890 So. 2d 1119, 1127 (Fla. 4th DCA 2004). Additionally, "Florida law permits a party to rescind a contract based on unilateral mistake unless the mistake results from an inexcusable lack of due care or unless the other party has so detrimentally relied on the contract it would be inequitable to order rescission." *Flynt*, 980 So.2d at 1219.

United moves for summary judgment on Windward's equitable claims on the ground that: (1) first, Windward has not met its burden of proving, by clear and convincing evidence, the existence of mutual mistake and/or unilateral mistake coupled with inequitable conduct that would warrant reformation; and (2) second, Windward has not shown any requisite ground to support rescission. (*See* Doc. 43, pp. 14, 22.) Windward counters that there are genuine issues of material fact that preclude summary judgment on its equitable claims. (Doc. 46, pp. 14, 18) The Court agrees with Windward.

Construed in the light most favorable to Windward, the record reveals that when United issued the Policy, it knew the Policy should not have included the Vacancy Requirement. (*See* Doc. 44-1, 79:10–13, 8:11–19, 106:20–25.) Additionally, Agent testified that the March 2013 E-mail to Broker was an explicit request for immediate removal of the Vacancy Requirement from the Policy. (Doc. 44-14, 71:20–72:4, 82:11–84:7.) United's arguments to the contrary[12] raise questions of fact that cannot be resolved

---

[12] For instance, United maintains that it received neither written notification that the Premises were occupied nor instruction to remove the Vacancy Requirement until after the Loss. (Doc. 44-8, 87:8–25). Further, Broker testified that the March 2013 E-mail was

by the Court on summary judgment. *See* Fed. R. Civ. P. 56(a). As such, United's motion for summary judgment on Windward's equitable claims is due to be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant United National Insurance Company's Dispositive Motion for Summary Judgment (Doc. 43) is **GRANTED IN PART AND DENIED IN PART**.

    a. The Motion is **GRANTED** as to Counts I and II of Plaintiff's Complaint.

    b. In all other respects, the Motion is **DENIED**.

2. Pursuant to Federal Rule of Civil Procedure 54(b), the Clerk is **DIRECTED** to enter judgment in favor of Defendant United National Insurance Company and against Plaintiff The Windward on Lake Conway Condominium Association, Inc. on Counts I and II of the Complaint (Doc. 2, ¶¶ 8–45.)

3. The Court will conduct a bench trial on Counts III and IV of Plaintiff's Complaint. The Court will set a date certain for the bench trial at the Final Pretrial Conference.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 13, 2015.

---

not sufficiently specific to constitute a request for removal of the Vacancy Requirement. (Doc. 42-4 at 54:4–54:22, 55:14–55:23, 56:12–56:15, 60:18–60:22, 64:24–66:7, 72:17–72:22, 76:3–76:15, 107:11–107:16. 142:11–142:15.)



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record